NO. 07-09-00150-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 20, 2010

STEVEN T. LOGAN, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-411,661; HONORABLE DAVID GLEASON, JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Steven T. Logan, appeals his conviction for capital murder and sentence of incarceration for life in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

Factual and Procedural Background

Appellant was charged with murdering his mother, Vicki Logan, and grandmother, Wanda Taylor, during the same criminal transaction, on or about January

27, 2006.[1] Vicki and Wanda lived next door to one another. Appellant lived with Vicki until their relationship became so strained that Vicki kicked appellant out of her house. Appellant then moved into Wanda's house. A day or two before Vicki and Wanda were murdered, Wanda had the locks on her house changed. Wanda had informed a teller at her bank that she was changing her locks because she was going to kick her grandson out of her house. However, on the date of the murders, appellant's belongings were still in the house and he still had a working code to the keypad for the garage door opener.

Vicki did not arrive at her job on January 27, 2006. Because of Vicki's excellent work attendance, some of her co-workers began attempting to contact her. When their efforts were unsuccessful, two of Vicki's co-workers, Bryan Scott and Lauren Marshall, decided to go to her house to check on her. When Scott and Marshall arrived, they saw Vicki's car and appellant's truck parked at Vicki's house. Scott and Marshall walked around Vicki's and Wanda's homes, knocking on doors and windows, but no one responded. Marshall called 911 and informed the 911 operator that she thought that appellant had done something to Vicki. Shortly after the 911 call, appellant exited the front of Vicki's home with his pit bull. Scott and Marshall asked appellant where Vicki was and appellant responded that she must be at work. When appellant was informed that Vicki was not at work, he stated that she was probably at Wanda's house.

Appellant then went to Wanda's house, entered a code into the keypad on the garage door, entered the residence for less than a minute, and then came out of the house acting confused. Appellant stated that Vicki and Wanda were inside and that

---

[1] See TEX. PENAL CODE ANN. § 19.03(a)(7) (Vernon Supp. 2009).

there was blood everywhere. Appellant then got sick. Appellant again went into the house for a few seconds. When appellant reemerged, he began acting hysterically and opined that drug dealers must have done this to get back at him. Scott attempted to console appellant and noticed that appellant had redness and scratches on the knuckles of his hands.

Kevin Ivy of the Lubbock Fire Department was the first responder at the scene. When Ivy asked appellant what was going on, appellant responded that he had spent the night at a friend's house. When Ivy pressed appellant regarding what was in Wanda's house, appellant told Ivy that he would have to go inside and see for himself. In talking to appellant, Ivy noted that appellant had scratches on his arms and hands. Ivy eventually entered the house and found the bodies. As other responders arrived at the scene, Lubbock Police Detective Rich Calderon handcuffed appellant and placed him in another officer's vehicle for officer safety because Calderon knew from the "call sheet" that appellant had a history of violent behavior. During the investigation of the scene, it was determined that both Wanda and Vicki were dead.

Appellant was transported to the police department for questioning, but he was not placed under arrest. No statement from appellant was taken and he was released.

In the evening before the bodies of Vicki and Wanda were discovered, appellant spent some time with a group of friends. At some point, the group decided to go to a local bar, but appellant did not go with them. Appellant met up with his friends after the group left the bar and appellant asked one of his friends to rent him a hotel room because appellant had left his identification at his home. After the investigation of this

3

case progressed, appellant contacted one of his friends and asked him to lie to his attorney about whether appellant went to the bar with the group on the night in question.

Detective Wesley Shields, the identification officer for the case, investigated Wanda's house and found no signs of forced entry. Further, he noted that it did not appear that anything had been stolen from the residence. In the room that had been appellant's room, Shields found a mirror on which the phrase "Sorry we missed you" had been written in lipstick. Pieces of duct tape were found throughout the house and a black cord was found under Vicki's body. Finally, some checks were found in a pair of appellant's boots that appeared to have been stolen from Wanda's checkbook.

On January 28, 2006, Detective Shields searched appellant's vehicle. This search was conducted without a warrant or appellant's consent. As a result of this search, Shields found a black cord, a pair of gloves, and a toboggan. The black cord that was found in appellant's vehicle was described as "similar" to the black cord found lying under Vicki's body.

The evidence that was collected was submitted to the Department of Public Safety laboratory for DNA testing. None of the DNA testing matched appellant's DNA. In addition, the black cord found under Vicki's body was compared to the black cord found in appellant's vehicle. The cords were determined to be "similar," and no differences could be determined between the cords.

The autopsy of Wanda's body determined that the cause of Wanda's death was asphyxia from strangulation. The autopsy of Vicki's body determined that the cause of Vicki's death was asphyxia from strangulation and blunt force trauma.

On February 8, 2006, appellant was charged, by indictment, with the offense of capital murder. A jury trial was held on April 6-9, 2009. After the State began presenting its case-in-chief, appellant moved to suppress the evidence that had been found in his vehicle, but specifically the black cord. This motion was heard by the trial court outside of the presence of the jury and was denied. At the conclusion of the State's case-in-chief, appellant moved for an instructed verdict, which the trial court denied. Following the trial, the jury found appellant guilty of capital murder, and the trial court sentenced appellant to incarceration for life without the possibility of parole.

By his appeal, appellant presents five issues, which will be addressed in the following order. By his first issue, appellant contends that the trial court erred in overruling his motion to suppress evidence seized from the warrantless search of his vehicle. By his second and third issues, appellant contends that the trial court's jury charge allowed the jury to convict him without a unanimous verdict in violation of both the United States and Texas constitutions. By his fifth issue, appellant contends that the trial court committed multiple evidentiary errors and that the cumulative effect of these errors denied him his right to a fair trial. Finally, by his fourth issue, appellant contends that the trial court erred in failing to instruct a verdict in appellant's favor because the evidence was insufficient to support appellant's guilt of the offense of capital murder.

## Motion to Suppress

By his first issue, appellant contends that the trial court erred in overruling his motion to suppress evidence seized from the warrantless search of his automobile.

5

Evidence seized by the police without a warrant may be admitted only if an exception to the Fourth Amendment's warrant requirement applies. McGee v. State, 105 S.W.3d 609, 615 (Tex.Crim.App 2003) (citing Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). Generally, a search conducted without a warrant is considered unreasonable *per se.* Maryland v. Dyson, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (citing California v. Carney, 471 U.S. 386, 390-91, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)). But there is an exception for vehicles--a warrantless search of a vehicle is reasonable if law enforcement officials have probable cause to believe that the vehicle contains evidence of a crime. See Neal v. State, 256 S.W.3d 264, 282 (Tex.Crim.App. 2008); Wiede v. State, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007).

Standard of Review

Probable cause requires an evaluation of probabilities, and probabilities "are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Probable cause is a "fluid concept"; its "substantive content" is derived from "the particular context in which" it is assessed. Wiede, 214 S.W.3d at 24 (quoting Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Probable cause to search exists when there is a "fair probability" of finding inculpatory evidence at the location being searched. Neal, 256 S.W.3d at 282. Known facts and circumstances include those personally known to law

6

enforcement officers or those derived from a "reasonably trustworthy" source. Torres v. State, 182 S.W.3d 899, 901-03 (Tex. Crim. App. 2005).

A trial court's decision on a motion to suppress is reviewed under an abuse of discretion standard. Villarreal v. State, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). When reviewing a trial judge's decision to deny a motion to suppress where probable cause to search was challenged, an appellate court must afford "almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the court's application of the law of search and seizure to those facts." State v. Ross, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000) (citing Carmouche v. State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000)). When, as here, the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. State v. Kelly, 204 S.W.3d 818, 818 (Tex.Crim.App. 2006). We then review the trial court's legal ruling *de novo*. Id.

When determining probable cause, an appellate court considers the totality of the circumstances. Dixon v. State, 206 S.W.3d 613, 616 (Tex.Crim.App. 2006). This means that a "divide-and-conquer" or piecemeal approach is prohibited. Wiede, 214 S.W.3d at 25. While the subjective intent or motive of law enforcement officials is not taken into account when considering the totality of the circumstances, the training, knowledge, and experience of law enforcement officials is taken into consideration. Id. In addition, probable cause is based on the collective knowledge of all of the police officers involved and is not dependent upon what facts were specifically known to the

officer conducting the search or seizure.  See Woodward v. State, 668 S.W.2d 337, 345-46 (Tex.Crim.App. 1984).

Analysis

In the present case, it is important to note that appellant did not move to suppress the evidence obtained from his vehicle until well into the State's presentation of its case-in-chief.  Thus, all of the evidence that had been presented relating to what facts surrounding the events of January 27, 2006, were known to the police must be considered in determining whether the January 28, 2006 warrantless search of appellant's vehicle was legal.

Additionally, the trial court entered findings of fact and conclusions of law relating to its ruling on appellant's motion to suppress.  We must accept these findings of fact as true so long as there is some evidence, taken in the light most favorable to the trial court's ruling, to support those findings.  Kelly, 204 S.W.3d at 818.

The trial court found that the witness who called 911 (Marshall) had informed the police that appellant had been violent in the past.  The testimony of Marshall and Calderon support this finding.  The trial court found that the police had been informed that appellant had gained entrance into Wanda's residence by using the garage keypad.  This finding is supported by the testimony of Marshall and Scott.  The trial court found that one witness had informed police that appellant had been faking his attempt to cry after discovering the bodies.  This finding is supported by Marshall's testimony.  The trial court found that police had been informed that Vicki had kicked appellant out of her home and that Wanda had done or was planning to do the same.  This finding is

8

supported by the testimony of Shields. The trial court found that the police had recovered checks stolen from Wanda in appellant's room. This finding was supported by Shields's testimony. The trial court found that numerous bloodstains and blood splatter was found at the crime scene. This finding is supported by photos of the crime scene and the testimony of the first responders. The trial court found that the police were informed that appellant's vehicle had been at Wanda's home earlier in the day, left, and returned within a few hours of the discovery of the bodies. This finding was supported by the testimony of Michael Calvillo, a neighbor of Wanda. The trial court further found that witnesses informed police that appellant appeared to have been freshly showered when the bodies were discovered. This finding is supported by the testimony of Scott. The trial court found that there were no signs of forced entry into Wanda's home. This finding was supported by Shields's testimony.[2]

Probable cause to search a vehicle exists when there is a "fair probability" of finding inculpatory evidence at the location being searched. Neal v. State, 256 S.W.3d 264, 282 (Tex.Crim.App. 2008). We believe that the trial court's findings are sufficient to establish probable cause to believe that appellant had been involved in the murder of Vicki and Wanda and that, because of the prevalence of blood located at the scene of the crime, evidence, in the form of blood, might be located in appellant's vehicle. See

---

[2] While appellant implies that some of the trial court's findings were not supported by evidence presented prior to the hearing on the motion to suppress, each of the findings addressed in this paragraph were supported by evidence that was before the trial court and could be properly considered by the trial court.

<u>Zarychta v. State</u>, 44 S.W.3d 155, 163-64 (Tex.App.—Houston [14th Dist.] 2001, pet. denied).[3]

In his appellate brief, appellant relies heavily on the fact that the police detained appellant for questioning, but released him. According to appellant, this evidences that the police did not feel as if they had probable cause to arrest him. Appellant's argument is that, if the police did not have probable cause to arrest appellant, then they did not have probable cause to search his vehicle. However, there are a few holes in appellant's argument. First, appellant was detained for questioning on January 27th, within a few hours of the discovery of the bodies, while the search of appellant's vehicle did not occur until January 28th, after significant additional investigation of the scene of the crime had been completed. Second, that the police did not arrest appellant is not conclusive on the issue of whether they had probable cause to arrest appellant. Finally, there is no evidence of when, on January 27th, the police determined that there were no signs of forced entry into Wanda's home. Clearly, this was a key fact in establishing probable cause to believe that appellant, who was the only known person that had access to Wanda's home, had committed the crime.

Because we conclude that the facts known to the police were sufficient to warrant a reasonable person to conclude that there was a "fair probability" that a search of

---

[3] We are cognizant, as appellant points out, that <u>Zarychta</u> involved the seizure, rather than the search, of a vehicle. However, we believe that the facts known to the police at the time of the January 28th search were sufficient to establish probable cause to believe that evidence of a crime would be found in the vehicle. Nothing more is required to justify a search. <u>See</u> <u>Neal</u>, 256 S.W.3d at 282.

10

appellant's vehicle would yield inculpatory evidence, we overrule appellant's first issue. See Neal, 256 S.W.3d at 282.

## Unanimous Verdict

By his second and third issues, appellant contends that the trial court committed fundamental error under both the United States Constitution and the Texas Constitution by charging the jury in a way that would allow the jury to convict appellant without a unanimous verdict. Appellant contends that a capital murder charge, under Texas Penal Code section 19.03(a)(7)(A),[4] that combines multiple murder allegations into one application paragraph risks a jury verdict that is non-unanimous in that the jury may not have agreed as to which murders were proven beyond a reasonable doubt.

### Standard of Review

In reviewing a claim of jury charge error, the reviewing court must first determine whether there was error. Almanza v. State, 686 S.W.2d 157, 174 (Tex.Crim.App. 1987). If error is found, then the court must determine which harm standard to apply, which depends upon whether the complaining party objected to the charge on the grounds asserted on appeal. See id. at 171.

---

[4] Section 19.03. Capital Murder

(a) A person commits an offense if the person commits murder as defined under Section 19.02(b)(1) and:
    (7) the person murders more than one person:
        (A) during the same criminal transaction

TEX. PENAL CODE ANN. § 19.03(a)(7)(A).

11

Under both the United States and Texas constitutions, appellant was entitled to a unanimous jury verdict. See Jefferson v. State, 189 S.W.3d 305, 311-12 (Tex.Crim.App. 2006); Ngo v. State, 175 S.W.3d 738, 745 (Tex.Crim.App. 2005). To determine what the jury must be unanimous about, we must examine the statute to determine whether the legislature created multiple, separate offenses or a single offense with different manners or means of commission. Pizzo v. State, 235 S.W.3d 711, 714 (Tex.Crim.App. 2007).

Analysis

Looking to the statute under which appellant was charged in this case, for the jury to convict appellant of capital murder, it must have found that (1) appellant, (2) intentionally or knowingly, (3) caused, (4) the deaths of Vicki and Wanda, (5) during the same criminal transaction. See TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(7)(A). The application paragraph of the court's jury charge provides,

> . . . if you find from the evidence beyond a reasonable doubt that on or about January 27, 2006, in Lubbock County, Texas, as alleged in the indictment, the defendant, STEVEN T. LOGAN, did then and there intentionally and knowingly cause the deaths of Wanda Turner and Vicki Logan, during the same criminal transaction, by strangling each of them with his hands or cord, then you will find the defendant, STEVEN T. LOGAN, guilty of the offense of capital murder . . . .

Comparing the elements of the offense with the application paragraph in the court's charge makes it clear that the charge did not allow the jury to render a non-unanimous verdict. Applying the plain meaning to the words used in the court's jury charge, no juror could have found appellant guilty of capital murder unless the juror was

12

convinced beyond a reasonable doubt that appellant had murdered <u>both</u> Vicki <u>and</u> Wanda.

We overrule appellant's second and third issues.

## Cumulative Error

By his fifth issue, appellant contends that the trial court violated appellant's due process rights by allowing inadmissible hearsay testimony before the jury and that the cumulative effect of such error was reversible. At a very early point in the trial of appellant, a bench conference was held outside of the jury's presence. Appellant objected to testimony that Vicki and Wanda were afraid of appellant because such testimony would constitute hearsay. The State responded to this objection indicating that testimony of Vicki's and Wanda's fear of appellant fit within the "state of mind" exception to the hearsay rule. <u>See</u> TEX. R. EVID. 803(3). After hearing arguments regarding the scope of testimony allowable under Rule 803(3), the trial court overruled appellant's hearsay objection.

### Standard of Review

The doctrine of cumulative error provides that the cumulative effect of several errors can, in the aggregate, constitute reversible error, even though no single instance of error would. <u>See</u> <u>United States v. Munoz</u>, 150 F.3d 401, 418 (5th Cir. 1998); <u>Chamberlain v. State</u>, 998 S.W.2d 230, 238 (Tex.Crim.App. 1999) (stating, in dicta, that cumulative error could constitute reversible error). However, before the doctrine of cumulative error may be applied, the errors complained of must have been properly

13

preserved, see TEX. R. APP. P. 33.1, and must actually constitute error, see Chamberlain, 998 S.W.2d at 238 ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error.").

To preserve error, a complaining party must make a timely and specific request, objection, or motion and obtain an express or implied ruling on that request, objection, or motion. TEX. R. APP. P. 33.1(a); Lopez v. State, 253 S.W.3d 680, 684 (Tex.Crim.App. 2008). Moreover, an objection must be made each time inadmissible evidence is offered unless the complaining party obtains a running objection or obtains a ruling on his complaint in a hearing outside the presence of the jury. Lopez, 253 S.W.3d at 684. An objection to all testimony on a given subject made in a hearing outside of the jury's presence is sufficient to preserve error as to the totality of that evidence. See Ethington v. State, 819 S.W.2d 854, 859 (Tex.Crim.App. 1991). However, the nature of the objection and the trial court's ruling on that objection will be constrained to the specific grounds for the ruling sought by the objection's proponent. See TEX. R. APP. P. 33.1(a)(1)(A).

Analysis

Following argument in the hearing held outside of the jury's presence, the trial court's ruling was as follows:

> THE COURT: I'll overrule the [hearsay] objection and permit the testimony under 803(3). I do appreciate the State's caution [referencing the State's intent to avoid testimony relating specific acts of violence between appellant and the victims].
>
> MR. MURRAY [Defense Counsel]: Judge, may I have a running objection?

14

THE COURT: You may, yes, sir.

MR. MURRAY: And can we ask the Court to limit it just to that she had fear?

THE COURT: No, it will not be so limited. <u>However, if it gets into specifics, there might be another objection made</u>.

(emphasis added). From the trial court's ruling, we conclude that the trial court overruled appellant's hearsay objection to testimony that Vicki and Wanda feared appellant. However, we further conclude that the trial court made no ruling on any testimony that recounted specific acts that might have led Vicki and Wanda to fear appellant. In fact, we construe the trial court's statement as specifically identifying that any such testimony would require a subsequent objection. Thus, any error in the admission of testimony relating to specific acts that caused Vicki and Wanda to fear appellant was not preserved by the objection made outside of the jury's presence or by the running objection granted by the trial court.

Thus, we must review appellant's specific objections made to testimony regarding specific instances of violence between appellant and Vicki or Wanda. Appellant complains that the cumulative effect of testimony of specific acts of violence offered by witnesses Scott, Blackstock, Petit, Calderon, and Butler was sufficient to violate appellant's Due Process rights and deny him a fair trial. Scott testified that he had "knowledge" of physical violence between appellant and Vicki, however, he did not testify as to any specific instances of violence. Further, appellant made no specific objection to the testimony that Scott possessed such knowledge. Blackstock testified that Vicki was afraid of appellant and that her fear was "based on specific events."

Appellant did object to this questioning and the trial court overruled the objection, but cautioned the State "not to go into any specifics." Blackstock never identified any of these specific events. Petit testified that Vicki had revealed things to her that caused great concern and that Vicki's fear of appellant was based on "a physical action that had taken place." Appellant did not specifically object to Petit testifying regarding this specific instance of violence between appellant and Vicki. Detective Calderon testified that the call sheet indicated that appellant had a history of violent behavior. Appellant objected to this testimony solely on the basis of it being hearsay. Arguably, appellant's hearsay objection was sufficient to apprise the trial court that Calderon's testimony was exceeding the scope of the Rule 803(3) exception. Finally, Butler testified about a specific incident when appellant shoved Vicki against a wall. Appellant immediately objected and the trial court told the State to take a minute and advise Butler not to talk about the specifics. However, the trial court did overrule appellant's objection. Appellant also challenges Butler's testimony that Butler told Vicki that she needed to do something before appellant killed her. However, appellant's objection to this testimony was that it is speculative, and appellant does not argue on appeal how the trial court's overruling of this objection was in error.

After reviewing all of the challenged testimony, at best, appellant has preserved his objection to Detective Calderon's testimony that the call sheet indicated that appellant had a history of physical violence and Butler's testimony that appellant once shoved Vicki against a wall. Calderon's testimony is cumulative of other unobjected-to, nonspecific evidence that appellant had been violent in the past. See Lindsay v. State, 102 S.W.3d 223, 227 (Tex.App.—Houston [14th Dist.] 2003, pet. ref'd). As a result, the

only claimed error that was admitted and preserved for review is the testimony of Butler regarding the single instance when appellant shoved Vicki against a wall. Assuming, without deciding, that this testimony was erroneously admitted, it is clearly insufficient to establish a claim of cumulative error that would justify reversal. Further, in light of the evidence discussed throughout this opinion, we cannot say that the erroneous admission of this evidence affected appellant's substantial rights. See TEX. R. APP. P. 44.2(b).

Consequently, we overrule appellant's fifth issue.

## Sufficiency of the Evidence

By his fourth issue, appellant contends that the trial court erred in not instructing a verdict in favor of appellant because the evidence of appellant's commission of the murders was factually insufficient. By this issue, appellant challenges both the legal and factual sufficiency of the evidence supporting his conviction. Primarily, appellant contends that the only evidence linking him to the murders was circumstantial and that the failure to present any direct evidence of his involvement in the crime, especially in light of the exacting scientific measures employed in investigating this crime, constitutes legally and factually insufficient evidence to support his conviction.

### Standard of Review

When both legal and factual sufficiency are challenged, we are required to conduct an analysis of the legal sufficiency of the evidence first and then, only if we find

17

the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence.  See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).  In conducting a legal sufficiency review, it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. Clayton, 235 S.W.3d at 778.  An appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence.   Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt.  See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict.  See id. at 417.  As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the

18

jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Appellant argues that we are prohibited from considering inadmissible hearsay testimony in assessing the sufficiency of the evidence to support appellant's conviction. See Gardner v. State, 699 S.W.2d 831, 835 (Tex.Crim.App. 1985). However, the Texas Court of Criminal Appeals has overruled Gardner and has articulated that inadmissible hearsay admitted without objection is to be treated the same as all other evidence in the sufficiency context. See Chambers v. State, 711 S.W.2d 240, 247 (Tex.Crim.App. 1986).[5]

Analysis

Viewing the evidence in the light most favorable to the trial court's denial of appellant's motion for instructed verdict, as we must in a legal sufficiency review, we conclude that the evidence was legally sufficient to establish that (1) appellant, (2) intentionally or knowingly, (3) caused, (4) the deaths of Vicki and Wanda, (5) during the same criminal transaction. See TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(7)(A).

Evidence was presented that appellant had a tumultuous relationship with both his mother and grandmother. Evidence was presented that appellant possessed no alibi for several hours of the night in which the murders occurred; was placed at the

_____

[5] While appellant contends that he objected to much of the hearsay evidence that was introduced at trial, as discussed in the analysis of the previous issue, neither his running objection nor his specific objections were sufficient to cover much of the testimony complained of on appeal.

19

crime scene prior to the discovery of the bodies; appeared to have been freshly showered when he returned to Wanda's house to discover the bodies; and, after discovering the bodies, did not act in a manner consistent with what would be expected following the discovery of the brutal murder of one's mother and grandmother. Immediately after the bodies were discovered, it was observed that appellant had scratches on his hands and arms and redness on his knuckles. Police determined that there were no signs of forced entry into Wanda's home, and evidence was presented that appellant was the only known person with access to the home. Appellant's vehicle contained a black cord that was similar to the black cord found under the body of Vicki. Evidence was also presented that appellant had solicited a friend to lie regarding appellant's whereabouts on the night of the murders.

Considering all of the evidence in the light most favorable to the trial court's denial of appellant's motion for instructed verdict, we cannot say that a rational trier of fact could not have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at 319; Clayton, 235 S.W.3d at 778. Consequently, we conclude that the evidence was legally sufficient to support the trial court's ruling on appellant's motion for instructed verdict.

Appellant additionally challenges the factual sufficiency of the evidence to support his conviction. Appellant's presentation of this argument is unusual in that appellant contends that the evidence was so factually insufficient as to constitute fundamental error when the trial court denied his motion for instructed verdict. Appellant essentially argues that the evidence was factually insufficient because the

totality of the evidence presented was circumstantial and no direct evidence was offered that would place appellant at the scene of the crime.

Looking at the evidence in a neutral light, each of the circumstances indicating appellant's guilt identified above remains evidenced in the record. Contrary to appellant's contention, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). Essentially, appellant contends that the police's failure to locate DNA, fingerprint, or other evidence directly linking appellant to the scene of the crime precluded the trial court or the jury from finding appellant guilty of the murders beyond a reasonable doubt. However, considering that appellant had been living at Wanda's residence at some point prior to the murders, we suspect that if DNA or fingerprint evidence had been discovered at the scene of the crime, appellant would simply contend that such evidence proves nothing more than that he had been in the house at a prior time. Thus, the probative value of the presence or absence of DNA or fingerprint evidence matching appellant in Wanda's house is greatly diminished.

While we agree with appellant that the majority of the evidence presented in this case is circumstantial, we conclude that this circumstantial evidence was sufficient to enable the jury and the trial court to rationally conclude that appellant was guilty of the charged offense beyond a reasonable doubt. See Watson, 204 S.W.3d at 415.

Because we conclude that the evidence was both legally and factually sufficient to support the trial court's denial of appellant's motion for instructed verdict, we overrule appellant's fourth issue.

## Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock<br>
Justice

Do not publish.