NO. 07-09-00150-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



MAY
20, 2010

 



 

STEVEN T. LOGAN, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 364TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2006-411,661; HONORABLE DAVID GLEASON, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

 

Appellant, Steven T. Logan, appeals
his conviction for capital murder and sentence of incarceration for life in the
Institutional Division of the Texas Department of Criminal Justice.  We affirm.

Factual and Procedural Background

            Appellant
was charged with murdering his mother, Vicki Logan, and grandmother, Wanda
Taylor, during the same criminal transaction, on or about January 27, 2006.[1]  Vicki and Wanda lived next door to one
another.  Appellant lived with Vicki
until their relationship became so strained that Vicki kicked appellant out of
her house.  Appellant then moved into
Wanda’s house.  A day or two before Vicki
and Wanda were murdered, Wanda had the locks on her
house changed.  Wanda had informed a
teller at her bank that she was changing her locks because she was going to
kick her grandson out of her house. 
However, on the date of the murders, appellant’s belongings were still
in the house and he still had a working code to the keypad for the garage door
opener.

            Vicki
did not arrive at her job on January 27, 2006. 
Because of Vicki’s excellent work attendance, some of her co-workers
began attempting to contact her.  When
their efforts were unsuccessful, two of Vicki’s co-workers, Bryan Scott and
Lauren Marshall, decided to go to her house to check on her.  When Scott and Marshall arrived, they saw
Vicki’s car and appellant’s truck parked at Vicki’s house.  Scott and Marshall walked around Vicki’s and
Wanda’s homes, knocking on doors and windows, but no one responded.  Marshall called 911 and informed the 911
operator that she thought that appellant had done something to Vicki.  Shortly after the 911 call, appellant exited
the front of Vicki’s home with his pit bull. 
Scott and Marshall asked appellant where Vicki was and appellant
responded that she must be at work.  When
appellant was informed that Vicki was not at work, he stated that she was
probably at Wanda’s house.  

            Appellant
then went to Wanda’s house, entered a code into the keypad on the garage door,
entered the residence for less than a minute, and then came out of the house
acting confused.  Appellant stated that
Vicki and Wanda were inside and that there was blood everywhere.  Appellant then got sick.  Appellant again went into the house for a few
seconds.  When appellant reemerged, he
began acting hysterically and opined that drug dealers must have done this to
get back at him.  Scott attempted to
console appellant and noticed that appellant had redness and scratches on the
knuckles of his hands.  

            Kevin
Ivy of the Lubbock Fire Department was the first responder at the scene.  When Ivy asked appellant what was going on,
appellant responded that he had spent the night at a friend’s house.  When Ivy pressed appellant regarding what was
in Wanda’s house, appellant told Ivy that he would have to go inside and see
for himself.  In talking to appellant,
Ivy noted that appellant had scratches on his arms and hands.  Ivy eventually entered the house and found
the bodies.  As other responders arrived
at the scene, Lubbock Police Detective Rich Calderon handcuffed appellant and
placed him in another officer’s vehicle for officer safety because Calderon
knew from the “call sheet” that appellant had a history of violent
behavior.  During the investigation of
the scene, it was determined that both Wanda and Vicki were dead.

            Appellant
was transported to the police department for questioning, but he was not placed
under arrest.  No statement from
appellant was taken and he was released.

            In
the evening before the bodies of Vicki and Wanda were discovered, appellant
spent some time with a group of friends. 
At some point, the group decided to go to a local bar, but appellant did
not go with them.  Appellant met up with
his friends after the group left the bar and appellant asked one of his friends
to rent him a hotel room because appellant had left his identification at his
home.  After the investigation of this
case progressed, appellant contacted one of his friends and asked him to lie to
his attorney about whether appellant went to the bar with the group on the
night in question.

            Detective
Wesley Shields, the identification officer for the case, investigated Wanda’s
house and found no signs of forced entry. 
Further, he noted that it did not appear that anything had been stolen
from the residence.  In the room that had
been appellant’s room, Shields found a mirror on which the phrase “Sorry we
missed you” had been written in lipstick. 
Pieces of duct tape were found throughout the house and a black cord was
found under Vicki’s body.  Finally, some
checks were found in a pair of appellant’s boots that appeared to have been
stolen from Wanda’s checkbook.  

            On
January 28, 2006, Detective Shields searched appellant’s vehicle.  This search was conducted without a warrant
or appellant’s consent.  As a result of
this search, Shields found a black cord, a pair of gloves, and a toboggan.  The black cord that was found in appellant’s
vehicle was described as “similar” to the black cord found lying under Vicki’s
body.  

            The
evidence that was collected was submitted to the Department of Public Safety
laboratory for DNA testing.  None of the
DNA testing matched appellant’s DNA.  In
addition, the black cord found under Vicki’s body was compared to the black
cord found in appellant’s vehicle.  The
cords were determined to be “similar,” and no differences could be determined
between the cords.  

            The
autopsy of Wanda’s body determined that the cause of Wanda’s death was asphyxia
from strangulation.  The autopsy of
Vicki’s body determined that the cause of Vicki’s death was asphyxia from
strangulation and blunt force trauma.

            On
February 8, 2006, appellant was charged, by indictment, with the offense of
capital murder.  A jury trial was held on
April 6-9, 2009.  After the State began
presenting its case-in-chief, appellant moved to suppress the evidence that had
been found in his vehicle, but specifically the black cord.  This motion was heard by the trial court
outside of the presence of the jury and was denied.  At the conclusion of the State’s
case-in-chief, appellant moved for an instructed verdict, which the trial court
denied.  Following the trial, the jury
found appellant guilty of capital murder, and the trial court sentenced
appellant to incarceration for life without the possibility of parole.

            By
his appeal, appellant presents five issues, which will be addressed in the
following order.  By his first issue,
appellant contends that the trial court erred in overruling his motion to
suppress evidence seized from the warrantless search of his vehicle.  By his second and third issues, appellant
contends that the trial court’s jury charge allowed the jury to convict him
without a unanimous verdict in violation of both the United States and Texas
constitutions.  By his fifth issue,
appellant contends that the trial court committed multiple evidentiary errors
and that the cumulative effect of these errors denied him his right to a fair
trial.  Finally, by his fourth issue,
appellant contends that the trial court erred in failing to instruct a verdict
in appellant’s favor because the evidence was insufficient to support appellant’s
guilt of the offense of capital murder.  

Motion to Suppress

By his first issue, appellant
contends that the trial court erred in overruling his motion to suppress
evidence seized from the warrantless search of his automobile.  Evidence seized by the police without a
warrant may be admitted only if an exception to the Fourth Amendment's warrant
requirement applies.  McGee v. State,
105 S.W.3d 609, 615 (Tex.Crim.App 2003) (citing Minnesota
v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130,
124 L.Ed.2d 334 (1993)).  Generally, a
search conducted without a warrant is considered unreasonable per se. 
Maryland v. Dyson, 527 U.S. 465, 466, 119 S.Ct.
2013, 144 L.Ed.2d 442 (1999) (citing California v. Carney, 471 U.S. 386,
390-91, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)).  But there is an exception for vehicles--a
warrantless search of a vehicle is reasonable if law enforcement officials have
probable cause to believe that the vehicle contains evidence of a crime.  See Neal v. State, 256 S.W.3d
264, 282 (Tex.Crim.App. 2008); Wiede
v. State, 214 S.W.3d 17, 24 (Tex.Crim.App.
2007).  

Standard of Review

Probable cause requires an evaluation
of probabilities, and probabilities "are the factual and practical
considerations of everyday life on which reasonable and prudent men, not legal
technicians, act."  Brinegar v. United States, 338 U.S. 160, 175,
69 S.Ct. 1302, 93 L.Ed. 1879 (1949).  Probable cause is a "fluid
concept"; its "substantive content" is derived from "the
particular context in which" it is assessed.  Wiede, 214
S.W.3d at 24 (quoting Ornelas v. United
States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134
L.Ed.2d 911 (1996)).  Probable cause to
search exists when there is a "fair probability" of finding inculpatory evidence at the location being searched.  Neal, 256 S.W.3d at
282.  Known facts and
circumstances include those personally known to law enforcement officers or
those derived from a "reasonably trustworthy" source.  Torres v. State, 182
S.W.3d 899, 901-03 (Tex. Crim. App. 2005). 

A trial court's decision on a motion
to suppress is reviewed under an abuse of discretion standard.  Villarreal v. State,
935 S.W.2d 134, 138 (Tex.Crim.App. 1996).  When reviewing a trial judge's decision to
deny a motion to suppress where probable cause to search was challenged, an
appellate court must afford "almost total deference to a trial court's
express or implied determination of historical facts and review de novo the court's application of the
law of search and seizure to those facts." 
State v. Ross, 32 S.W.3d 853, 856 (Tex.Crim.App.
2000) (citing Carmouche v. State, 10
S.W.3d 323, 327 (Tex.Crim.App. 2000)).  When, as here, the trial court makes explicit
fact findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court's ruling, supports those fact findings.  State v. Kelly, 204
S.W.3d 818, 818 (Tex.Crim.App. 2006).  We then review the trial court's legal ruling
de novo.  Id.

When determining probable cause, an
appellate court considers the totality of the circumstances.  Dixon v. State, 206
S.W.3d 613, 616 (Tex.Crim.App. 2006).  This means that a "divide-and-conquer"
or piecemeal approach is prohibited.  Wiede, 214 S.W.3d at 25.  While the subjective intent or motive of law
enforcement officials is not taken into account when considering the totality
of the circumstances, the training, knowledge, and experience of law
enforcement officials is taken into consideration.  Id. 
In addition, probable cause is based on the collective knowledge of all
of the police officers involved and is not dependent upon what facts were
specifically known to the officer conducting the search or seizure.  See Woodward v. State, 668 S.W.2d 337, 345-46 (Tex.Crim.App.
1984).

Analysis

            In
the present case, it is important to note that appellant did not move to
suppress the evidence obtained from his vehicle until well into the State’s presentation
of its case-in-chief.  Thus, all of the evidence
that had been presented relating to what facts surrounding the events of
January 27, 2006, were known to the police must be considered in determining
whether the January 28, 2006 warrantless search of appellant’s vehicle was
legal.  

Additionally, the trial court entered
findings of fact and conclusions of law relating to its ruling on appellant’s
motion to suppress.  We must accept these
findings of fact as true so long as there is some evidence, taken in the light
most favorable to the trial court’s ruling, to support those findings.  Kelly, 204 S.W.3d at
818.

            The
trial court found that the witness who called 911 (Marshall) had informed the
police that appellant had been violent in the past.  The testimony of Marshall and Calderon
support this finding.  The trial court
found that the police had been informed that appellant had gained entrance into
Wanda’s residence by using the garage keypad. 
This finding is supported by the testimony of Marshall and Scott.  The trial court found that one witness had
informed police that appellant had been faking his attempt to cry after
discovering the bodies.  This finding is
supported by Marshall’s testimony.  The
trial court found that police had been informed that Vicki had kicked appellant
out of her home and that Wanda had done or was planning to do the same.  This finding is supported by the testimony of
Shields.  The trial court found that the
police had recovered checks stolen from Wanda in appellant’s room.  This finding was supported by Shields’s
testimony.  The trial court found that
numerous bloodstains and blood splatter was found at the crime scene.  This finding is supported by photos of the
crime scene and the testimony of the first responders.  The trial court found that the police were
informed that appellant’s vehicle had been at Wanda’s home earlier in the day,
left, and returned within a few hours of the discovery of the bodies.  This finding was supported by the testimony
of Michael Calvillo, a neighbor of Wanda.  The trial court further found that witnesses
informed police that appellant appeared to have been freshly showered when the
bodies were discovered.  This finding is
supported by the testimony of Scott.  The
trial court found that there were no signs of forced entry into Wanda’s
home.  This finding was supported by
Shields’s testimony.[2]  

            Probable
cause to search a vehicle exists when there is a “fair probability” of finding inculpatory evidence at the location being searched.  Neal v. State, 256
S.W.3d 264, 282 (Tex.Crim.App. 2008).  We believe that the trial court’s findings
are sufficient to establish probable cause to believe that appellant had been
involved in the murder of Vicki and Wanda and that, because of the prevalence
of blood located at the scene of the crime, evidence, in the form of blood,
might be located in appellant’s vehicle. 
See Zarychta
v. State, 44 S.W.3d 155, 163-64 (Tex.App.—Houston
[14th Dist.] 2001, pet. denied).[3]

            In
his appellate brief, appellant relies heavily on the fact that the police
detained appellant for questioning, but released him.  According to appellant, this evidences that
the police did not feel as if they had probable cause to arrest him.  Appellant’s argument is that, if the police
did not have probable cause to arrest appellant, then they did not have
probable cause to search his vehicle. 
However, there are a few holes in appellant’s argument.  First, appellant was detained for questioning
on January 27th, within a few hours of the discovery of the bodies, while the
search of appellant’s vehicle did not occur until January 28th, after
significant additional investigation of the scene of the crime had been
completed.  Second, that the police did
not arrest appellant is not conclusive on the issue of whether they had
probable cause to arrest appellant. 
Finally, there is no evidence of when, on January 27th, the police
determined that there were no signs of forced entry into Wanda’s home.  Clearly, this was a key fact in establishing
probable cause to believe that appellant, who was the only known person that
had access to Wanda’s home, had committed the crime.

            Because
we conclude that the facts known to the police were sufficient to warrant a
reasonable person to conclude that there was a "fair probability"
that a search of appellant’s vehicle would yield inculpatory
evidence, we overrule appellant’s first issue. 
See Neal, 256 S.W.3d at 282.  

Unanimous Verdict

            By
his second and third issues, appellant contends that the trial court committed
fundamental error under both the United States Constitution and the Texas
Constitution by charging the jury in a way that would allow the jury to convict
appellant without a unanimous verdict. 
Appellant contends that a capital murder charge, under Texas Penal Code
section 19.03(a)(7)(A),[4]
that combines multiple murder allegations into one application paragraph risks
a jury verdict that is non-unanimous in that the jury may not have agreed as to
which murders were proven beyond a reasonable doubt.

Standard of Review

            In
reviewing a claim of jury charge error, the reviewing court must first
determine whether there was error.  Almanza
v. State, 686 S.W.2d 157, 174 (Tex.Crim.App.
1987).  If error is found, then
the court must determine which harm standard to apply, which depends upon
whether the complaining party objected to the charge on the grounds asserted on
appeal.  See id. at 171.  

            Under
both the United States and Texas constitutions, appellant was entitled to a
unanimous jury verdict.  See Jefferson
v. State, 189 S.W.3d 305, 311-12 (Tex.Crim.App.
2006); Ngo v. State, 175 S.W.3d 738, 745 (Tex.Crim.App.
2005).  To determine what the jury must
be unanimous about, we must examine the statute to determine whether the
legislature created multiple, separate offenses or a single offense with
different manners or means of commission. 
Pizzo v. State, 235 S.W.3d 711, 714 (Tex.Crim.App.
2007).

Analysis

            Looking
to the statute under which appellant was charged in this case, for the jury to
convict appellant of capital murder, it must have found that (1) appellant, (2)
intentionally or knowingly, (3) caused, (4) the deaths of Vicki and
Wanda, (5) during the same criminal transaction.  See Tex.
Penal Code Ann. §§ 19.02(b)(1),
19.03(a)(7)(A).  The application
paragraph of the court’s jury charge provides,

. . . if you find from the evidence beyond a reasonable doubt that on or
about January 27, 2006, in Lubbock County, Texas, as alleged in the indictment,
the defendant, STEVEN T. LOGAN, did then and there intentionally and knowingly
cause the deaths of Wanda Turner and Vicki Logan, during the same criminal
transaction, by strangling each of them with his hands or cord, then you will
find the defendant, STEVEN T. LOGAN, guilty of the offense of capital murder .
. . .

 

            Comparing
the elements of the offense with the application paragraph in the court’s
charge makes it clear that the charge did not allow the jury to render a
non-unanimous verdict.  Applying the
plain meaning to the words used in the court’s jury charge, no juror could have
found appellant guilty of capital murder unless the juror was convinced beyond
a reasonable doubt that appellant had murdered both Vicki and
Wanda.

            We
overrule appellant’s second and third issues.

Cumulative Error

By his fifth issue, appellant
contends that the trial court violated appellant’s due process rights by
allowing inadmissible hearsay testimony before the jury and that the cumulative
effect of such error was reversible.  At
a very early point in the trial of appellant, a bench conference was held
outside of the jury’s presence. 
Appellant objected to testimony that Vicki and Wanda were afraid of
appellant because such testimony would constitute hearsay.  The State responded to this objection
indicating that testimony of Vicki’s and Wanda’s fear of appellant fit within
the “state of mind” exception to the hearsay rule.  See Tex.
R. Evid. 803(3).  After hearing arguments regarding the scope
of testimony allowable under Rule 803(3), the trial court overruled appellant’s
hearsay objection.

Standard of Review

            The
doctrine of cumulative error provides that the cumulative effect of several
errors can, in the aggregate, constitute reversible error, even though no
single instance of error would.  See
United States v. Munoz, 150 F.3d 401, 418 (5th Cir. 1998); Chamberlain
v. State, 998 S.W.2d 230, 238 (Tex.Crim.App.
1999) (stating, in dicta, that cumulative error could constitute reversible
error).  However, before the doctrine of
cumulative error may be applied, the errors complained of must have been
properly preserved, see Tex. R.
App. P. 33.1, and must actually constitute error, see Chamberlain,
998 S.W.2d at 238 (“[W]e are aware of no authority holding that non-errors may
in their cumulative effect cause error.”).

            To
preserve error, a complaining party must make a timely and specific request,
objection, or motion and obtain an express or implied ruling on that request,
objection, or motion.  Tex. R. App. P. 33.1(a); Lopez v. State, 253 S.W.3d 680,
684 (Tex.Crim.App. 2008).  Moreover, an objection must be made each time
inadmissible evidence is offered unless the complaining party obtains a running
objection or obtains a ruling on his complaint in a hearing outside the
presence of the jury.  Lopez, 253 S.W.3d at 684.  An
objection to all testimony on a given subject made in a hearing outside of the
jury’s presence is sufficient to preserve error as to the totality of that
evidence.  See Ethington
v. State, 819 S.W.2d 854, 859 (Tex.Crim.App.
1991).  However, the nature of the
objection and the trial court’s ruling on that objection will be constrained to
the specific grounds for the ruling sought by the objection’s proponent.  See Tex.
R. App. P. 33.1(a)(1)(A).

Analysis

            Following
argument in the hearing held outside of the jury’s presence, the trial court’s
ruling was as follows:

THE COURT: I’ll overrule the [hearsay] objection and permit the testimony
under 803(3).  I do appreciate the
State’s caution [referencing the State’s intent to avoid testimony relating
specific acts of violence between appellant and the victims].

MR. MURRAY [Defense Counsel]: Judge, may I have a running objection?

THE COURT: You may, yes, sir.

MR. MURRAY: And can we ask the Court to limit it just to that she had
fear?

THE COURT: No, it will not be so limited. 
However, if it gets into specifics, there might be another objection
made.

 

(emphasis
added).  From the trial court’s ruling,
we conclude that the trial court overruled appellant’s hearsay objection to
testimony that Vicki and Wanda feared appellant.  However, we further conclude that the trial
court made no ruling on any testimony that recounted specific acts that might
have led Vicki and Wanda to fear appellant. 
In fact, we construe the trial court’s statement as specifically
identifying that any such testimony would require a subsequent objection.  Thus, any error in the admission of testimony
relating to specific acts that caused Vicki and Wanda to fear appellant was not
preserved by the objection made outside of the jury’s presence or by the
running objection granted by the trial court.

            Thus,
we must review appellant’s specific objections made to testimony regarding
specific instances of violence between appellant and Vicki or Wanda.  Appellant complains that the cumulative
effect of testimony of specific acts of violence offered by witnesses Scott, Blackstock, Petit, Calderon, and Butler was sufficient to
violate appellant’s Due Process rights and deny him a fair trial.  Scott testified that he had “knowledge” of
physical violence between appellant and Vicki, however, he did not testify as
to any specific instances of violence. 
Further, appellant made no specific objection to the testimony that
Scott possessed such knowledge.  Blackstock testified that Vicki was afraid of appellant and
that her fear was “based on specific events.” 
Appellant did object to this questioning and the trial court overruled
the objection, but cautioned the State “not to go into any specifics.”  Blackstock never
identified any of these specific events. 
Petit testified that Vicki had revealed things to her that caused great
concern and that Vicki’s fear of appellant was based on “a physical action that
had taken place.”  Appellant did not
specifically object to Petit testifying regarding this specific instance of
violence between appellant and Vicki. 
Detective Calderon testified that the call sheet indicated that
appellant had a history of violent behavior. 
Appellant objected to this testimony solely on the basis of it being
hearsay.  Arguably, appellant’s hearsay
objection was sufficient to apprise the trial court
that Calderon’s testimony was exceeding the scope of the Rule 803(3)
exception.  Finally, Butler testified
about a specific incident when appellant shoved Vicki against a wall.  Appellant immediately objected and the trial
court told the State to take a minute and advise Butler not to talk about the specifics.  However, the trial court did overrule
appellant’s objection.  Appellant also
challenges Butler’s testimony that Butler told Vicki that she needed to do
something before appellant killed her. 
However, appellant’s objection to this testimony was that it is
speculative, and appellant does not argue on appeal how the trial court’s
overruling of this objection was in error.

            After
reviewing all of the challenged testimony, at best, appellant has preserved his
objection to Detective Calderon’s testimony that the call sheet indicated that
appellant had a history of physical violence and Butler’s testimony that
appellant once shoved Vicki against a wall. 
Calderon’s testimony is cumulative of other unobjected-to,
nonspecific evidence that appellant had been violent in the past.  See Lindsay v. State, 102
S.W.3d 223, 227 (Tex.App.—Houston [14th
Dist.] 2003, pet. ref’d).  As a result, the only claimed error that was
admitted and preserved for review is the testimony of Butler regarding the
single instance when appellant shoved Vicki against a wall.  Assuming, without deciding, that this
testimony was erroneously admitted, it is clearly insufficient to establish a
claim of cumulative error that would justify reversal.  Further, in light of the evidence discussed
throughout this opinion, we cannot say that the erroneous admission of this
evidence affected appellant’s substantial rights.  See Tex.
R. App. P. 44.2(b).  

            Consequently,
we overrule appellant’s fifth issue.

Sufficiency of the Evidence

            By
his fourth issue, appellant contends that the trial court erred in not
instructing a verdict in favor of appellant because the evidence of appellant’s
commission of the murders was factually insufficient.  By this issue, appellant challenges both the
legal and factual sufficiency of the evidence supporting his conviction.  Primarily, appellant contends that the only
evidence linking him to the murders was circumstantial and that the failure to
present any direct evidence of his involvement in the crime, especially in
light of the exacting scientific measures employed in investigating this crime,
constitutes legally and factually insufficient evidence to support his
conviction.

Standard of Review

When
both legal and factual sufficiency are challenged, we are required to conduct
an analysis of the legal sufficiency of the evidence first and then, only if we
find the evidence to be legally sufficient, do we analyze the factual
sufficiency of the evidence.  See Clewis v. State, 922 S.W.2d
126, 133 (Tex.Crim.App. 1996).

In
assessing the legal sufficiency of the evidence, we review all the evidence in
the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Clayton v. State,
235 S.W.3d 772, 778 (Tex.Crim.App. 2007).  In conducting a legal sufficiency review, it
is assumed that the trier of fact resolved conflicts
in the testimony, weighed the evidence, and drew reasonable inferences in a
manner that supports the verdict.  Clayton,
235 S.W.3d at 778. 
An appellate court may not sit as a thirteenth juror, but rather must
uphold the jury’s verdict unless it is irrational or unsupported by more than a
mere modicum of evidence.  Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App.
1988).

            When an appellant challenges the factual sufficiency of
the evidence supporting his conviction, the reviewing court must determine whether,
considering all the evidence in a neutral light, the jury was rationally
justified in finding the appellant guilty beyond a reasonable doubt.  See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App.
2006).  In performing a factual
sufficiency review, we must give deference to the fact finder’s determinations
if supported by evidence and may not order a new trial simply because we may
disagree with the verdict.  See id.
at 417.  As an
appellate court, we are not justified in ordering a new trial unless there is
some objective basis in the record demonstrating that the great weight and
preponderance of the evidence contradicts the jury’s verdict.  See id.  Additionally, an appellate opinion addressing
factual sufficiency must include a discussion of the most important evidence
that appellant claims undermines the jury’s
verdict.  Sims v.
State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Appellant
argues that we are prohibited from considering inadmissible hearsay testimony
in assessing the sufficiency of the evidence to support appellant’s
conviction.  See Gardner v.
State, 699 S.W.2d 831, 835 (Tex.Crim.App.
1985).  However, the Texas Court of
Criminal Appeals has overruled Gardner and has articulated that
inadmissible hearsay admitted without objection is to be treated the same as
all other evidence in the sufficiency context. 
See Chambers v. State, 711 S.W.2d 240,
247 (Tex.Crim.App. 1986).[5]

Analysis

            Viewing
the evidence in the light most favorable to the trial court’s denial of
appellant’s motion for instructed verdict, as we must in a legal sufficiency
review, we conclude that the evidence was legally sufficient to establish that (1)
appellant, (2) intentionally or knowingly, (3) caused, (4) the deaths of Vicki and
Wanda, (5) during the same criminal transaction.  See Tex.
Penal Code Ann. §§ 19.02(b)(1),
19.03(a)(7)(A).  

            Evidence
was presented that appellant had a tumultuous relationship with both his mother
and grandmother.  Evidence was presented
that appellant possessed no alibi for several hours of the night in which the
murders occurred; was placed at the crime scene prior to the discovery of the
bodies; appeared to have been freshly showered when he returned to Wanda’s
house to discover the bodies; and, after discovering the bodies, did not act in
a manner consistent with what would be expected following the discovery of the
brutal murder of one’s mother and grandmother. 
Immediately after the bodies were discovered, it was observed that
appellant had scratches on his hands and arms and redness on his knuckles.  Police determined that there were no signs of
forced entry into Wanda’s home, and evidence was presented that appellant was
the only known person with access to the home. 
Appellant’s vehicle contained a black cord that was similar to the black
cord found under the body of Vicki. 
Evidence was also presented that appellant had solicited a friend to lie
regarding appellant’s whereabouts on the night of the murders.  

            Considering
all of the evidence in the light most favorable to the trial court’s denial of
appellant’s motion for instructed verdict, we cannot say that a rational trier of fact could not have found the essential elements
of the offense beyond a reasonable doubt. 
Jackson, 443 U.S. at 319; Clayton, 235
S.W.3d at 778.  Consequently, we
conclude that the evidence was legally sufficient to support the trial court’s
ruling on appellant’s motion for instructed verdict.

            Appellant
additionally challenges the factual sufficiency of the evidence to support his
conviction.  Appellant’s presentation of
this argument is unusual in that appellant contends that the evidence was so
factually insufficient as to constitute fundamental error when the trial court
denied his motion for instructed verdict. 
Appellant essentially argues that the evidence was factually
insufficient because the totality of the evidence presented was circumstantial
and no direct evidence was offered that would place appellant at the scene of
the crime.

            Looking
at the evidence in a neutral light, each of the circumstances indicating
appellant’s guilt identified above remains evidenced in the record.  Contrary to appellant’s contention, circumstantial
evidence is as probative as direct evidence in establishing the guilt of an
actor, and circumstantial evidence alone can be sufficient to establish
guilt.  Hooper v.
State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).  Essentially, appellant contends that the police’s failure to locate DNA,
fingerprint, or other evidence directly linking appellant to the scene of the
crime precluded the trial court or the jury from finding appellant guilty of
the murders beyond a reasonable doubt. 
However, considering that appellant had been living at Wanda’s residence
at some point prior to the murders, we suspect that if DNA or fingerprint
evidence had been discovered at the scene of the crime, appellant would simply
contend that such evidence proves nothing more than that he had been in the
house at a prior time.  Thus, the
probative value of the presence or absence of DNA or fingerprint evidence
matching appellant in Wanda’s house is greatly diminished.

            While
we agree with appellant that the majority of the evidence presented in this
case is circumstantial, we conclude that this circumstantial evidence was
sufficient to enable the jury and the trial court to rationally conclude that appellant
was guilty of the charged offense beyond a reasonable doubt.  See Watson, 204
S.W.3d at 415.

            Because
we conclude that the evidence was both legally and factually sufficient to
support the trial court’s denial of appellant’s motion for instructed verdict,
we overrule appellant’s fourth issue.

Conclusion

            Having
overruled each of appellant’s issues, we affirm the judgment of the trial
court.

 

            








                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

Do
not publish.  

 











[1]
See Tex. Penal Code Ann. § 19.03(a)(7) (Vernon Supp. 2009).





[2] While appellant
implies that some of the trial court’s findings were not supported by evidence
presented prior to the hearing on the motion to suppress, each of the findings
addressed in this paragraph were supported by evidence that was before the
trial court and could be properly considered by the trial court.





[3]
We are
cognizant, as appellant points out, that Zarychta
involved the seizure, rather than the search, of a vehicle.  However, we believe that the facts known to
the police at the time of the January 28th search were sufficient to establish
probable cause to believe that evidence of a crime would be found in the
vehicle.  Nothing more is required to
justify a search.  See Neal,
256 S.W.3d at 282.





[4]
Section
19.03.  Capital Murder

 

(a) A person commits an offense if the
person commits murder as defined under Section 19.02(b)(1) and:

(7) the person
murders more than one person:

(A) during the
same criminal transaction

 

Tex. Penal Code Ann. § 19.03(a)(7)(A).





[5]
While appellant
contends that he objected to much of the hearsay
evidence that was introduced at trial, as discussed in the analysis of the
previous issue, neither his running objection nor his specific objections were
sufficient to cover much of the testimony complained of on appeal.