**Justin Daniel LINDSAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–01–01234–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 27, 2003.

Rehearing Overruled May 1, 2003.

R.P. Cornelius, Houston, for appellant.

Bridget Holloway, Houston, for appellee.

Panel consists of Chief Justice BRISTER, Justices HUDSON and FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant pleaded guilty to aggravated robbery, and the jury assessed punishment at seventy-five years in the Texas Department of Criminal Justice, Institutional Division and a fine of $10,000.00.  On appeal, appellant raises eight issues.  We reverse

the punishment based on appellant's final issue that the trial judge erred in failing to charge the jury on the definition of "criminal responsibility," and we remand the case for a new punishment hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant and his accomplice, Roger, who were looking for cash and narcotics, decided to rob an acquaintance's house. They obtained sawed-off shot guns and snorted cocaine before they entered the wrong house. Appellant held a girl at gunpoint while his accomplice searched the house. As appellant tied the girl with tape and prepared to leave her in the bathroom, he heard gunshots upstairs. The accomplice shot and killed another individual who was sleeping upstairs. Appellant pleaded guilty to involvement in the aggravated robbery and agreed to testify against his accomplice to reduce the indictment.

## DISCUSSION

Appellant raises eight points of error. Combined in his first two issues, appellant contends the trial judge erred when he admitted appellant's juvenile conviction to enhance punishment. Second, appellant argues the trial judge erred when he allowed appellant's juvenile probation officer to testify. Third, appellant complains a border patrol officer should not have testified regarding appellant's possible drug smuggling involvement. Combined in his next two points of error, appellant complains it was error for his father and stepmother to give victim-impact testimony about his juvenile conviction for indecency with his stepsister. Next, appellant complains hearsay testimony by his girlfriend should have been admitted. Finally, appellant argues the trial judge erred in failing to charge the jury on the definition of "criminal responsibility."

### 1. Appellant's Juvenile Conviction

First, we address whether the trial judge erred in allowing the State to enhance appellant's punishment with his juvenile conviction. Appellant argues that this conviction violates the United States Constitution's "ex post facto" law. Appellant testified that, when he pleaded true to indecency with a child as a juvenile, the law in Texas prohibited the State from using his conviction against him for any purpose. However, this testimony was not completely accurate.

In 1996, appellant pleaded guilty to indecency with a child and received probation. At the time, article 42.12, section 5(c) of the Code of Criminal Procedure provided that if the defendant successfully completed his deferred adjudication community supervision, he would not receive a conviction. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, *amended by* Act of May 31, 1997, 75th Leg., R.S. Ch 667, § 2, 1997 Tex. Gen. Laws 2250, 2251. Also, the State could not use a defendant's successful dismissal or discharge of deferred adjudication to enhance his punishment under section 12.42 of the Penal Code. *See* TEX. PEN.CODE ANN. § 12.42 (Vernon 1996); *see also Scott v. State,* 55 S.W.3d 593, 596–97 (Tex.Crim.App.2001). But, appellant did not successfully complete his probation and obtain a dismissal or discharge. Even in 1996, if a defendant did not successfully complete his probation, the conviction could be used to enhance punishment. *See Scott,* 55 S.W.3d at 596–97 (Tex.Crim.App. 2001) (finding when a defendant completed probation the prior conviction could not be used to enhance punishment, but not commenting on when the defendant does not complete probation). In appellant's case, the State moved to revoke appellant's pro-

bation because he failed a drug test and accumulated several curfew violations.

Because appellant did not successfully complete his probation in 1996, the State could have used the conviction to enhance his punishment, and the State can now use the conviction to enhance his punishment. Thus, the trial judge correctly allowed enhancement with appellant's prior conviction and we overrule appellant's first two issues.

### 2. Appellant's Juvenile Probation Officer's Testimony

█ Second, appellant complains the trial court erred when it allowed appellant's juvenile probation officer to testify during the punishment phase regarding appellant's conduct while on probation. Specifically, appellant objected to testimony by his probation officer that appellant violated drug testing, failed to report to the officer, and fought with family members. Under the Texas Code of Criminal Procedure, a trial court can admit any matter it deems relevant to sentencing, including evidence of other crimes or bad acts. Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a).

The trial court did not abuse its discretion by allowing the officer to testify to appellant's prior behavior while on probation. The Code allows this evidence, and the trial judge found it relevant in assessing punishment. We overrule appellant's third issue.

### 3. Border Patrol Officer's Testimony

Third, appellant complains the trial judge erred again in the punishment phase when he allowed a border patrol officer to testify that appellant participated in drug smuggling.

█ Relevant unadjudicated offenses and bad acts are admissible in the punishment phase of trial. See Williams v.

State, 958 S.W.2d 844, 846 (Tex.App.-Houston [14th Dist.] 1997, no pet.); Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a). The definition of relevancy in punishment is "a question of what is helpful to the jury in determining the appropriate sentence in a particular case." Rogers v. State, 991 S.W.2d 263, 265 (Tex.Crim.App.1999). The testimony by the border patrol officer was relevant to the jury in assessing punishment. The officer testified that while appellant was on parole, he traveled into the United States with an individual who possessed approximately a pound of marijuana. When asked about this situation, appellant gave the officer a fake name and eventually the officer arrested both men. This evidence would be helpful to a jury in assessing punishment.

█ Nonetheless, even if it were error to allow the officer's testimony, it was harmless because the same evidence was admitted later through appellant. See Leday v. State, 983 S.W.2d 713, 717–18 (Tex. Crim.App.1998) (holding that the improper admission of evidence is not reversible error if the same facts are shown by other unchallenged evidence admitted before or after the improperly admitted evidence). Appellant testified during the punishment phase; he admitted his companion possessed a pound of marijuana, and he admitted giving a fake name when questioned by police. Therefore, any harm in allowing the earlier testimony was cured by appellant's testimony, and we overrule his fourth issue.

### 4. Victim–Impact Statements

In appellant's next two issues, he argues the trial judge erred in allowing his father and stepmother to give victim-impact testimony regarding appellant's prior indecency with his stepsister—an extraneous crime. We agree that it was error and

appellant preserved error; however, as we explain below, we find the error harmless.

Generally, victim-impact testimony regarding extraneous crimes is inadmissible. *See Cantu v. State*, 939 S.W.2d 627, 637 (Tex.Crim.App.1997). Victim-impact testimony can run a risk of extreme prejudice and can lead to an unfair punishment hearing.[1] *See Boston v. State*, 965 S.W.2d 546, 550 (Tex.App.-Houston [14th Dist.] 1997, no pet.). Trial courts limit victim-impact testimony to the victim named in the indictment. *See Barletta v. State*, 994 S.W.2d 708, 713 (Tex.App.-Texarkana 1999, pet. ref'd); *Cantu*, 939 S.W.2d at 637–38 (holding the admission of victim-impact testimony was error, but the admission was harmless).

In 2000, appellant pleaded guilty to indecency with a child; the child was his six-year-old stepsister. Here, before the appellant's father and stepmother testified to the impact the prior crime had on their daughter and their other children, appellant's counsel properly objected. As noted earlier, the trial judge incorrectly overruled the objection and allowed the testimony.

But, even though this was error, this Court is required to disregard any error—except for constitutional error—that does not affect appellant's substantial rights. Tex.R.App. P. 44.2(b). Constitutional error is "an error that directly offends the United States Constitution or the Texas Constitution without regard to any statute or rule that might also apply." *Alford v. State*, 22 S.W.3d 669, 673 (Tex. App.-Fort Worth 2000, pet. ref'd). Constitutional error is only present when a ruling is constitutionally required—not when a trial judge merely misapplies the rules of evidence. *Id.* Thus, erroneously admitted victim-impact testimony does not amount to constitutional error.

The correct inquiry then, becomes whether the defendant's substantial rights were violated and whether appellant's punishment was affected by the judgment. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997). "A substantial right is violated when the error made the subject of the appellant's complaint had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citing *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

Here, several factors are present that, when considered together, prevent this error from being a violation of appellant's substantial rights. First, the jury would likely assume, even without hearing testimony from the parents, the impact and trauma this had on the girl and the rest of the family. Second, several other extraneous crimes were mentioned throughout the trial. Appellant admitted that he had (1) used narcotics since he was twelve, (2) violated curfew while on probation, (3) cleansed his system before every probation meeting to pass narcotics testing, (4) used

---

1. The Texas Court of Criminal Appeals has stated the following:

The danger of unfair prejudice to a defendant inherent in the introduction of "victim impact" evidence with respect to a victim not named in the indictment on which he is being tried is unacceptably high. The admission of such evidence would open the door to admission of victim impact evidence arising from *any* extraneous offense committed by a defendant. Extraneous victim impact evidence, if anything, is more prejudicial than the non-extraneous victim impact evidence found by this Court to be inadmissible in *Smith* [*v. State*], *supra* [919 S.W.2d 96 (Tex.Crim.App. 1996)]. We hold that such evidence is irrelevant under Tex.R. Evid. 401 and therefore irrelevant in the context of the special issues under Art. 37.071.

*Cantu v. State*, 939 S.W.2d 627, 637 (Tex. Crim.App.1997).

narcotics while imprisoned in juvenile jail, (5) fought while in juvenile jail, (6) failed to register as a sex offender, (7) traveled into the United States from Mexico with a companion who possessed one pound of marijuana, (8) lied to the border patrol officer about his identity when the two men were arrested, and (9) been involved in four fights while in jail for this offense. With so many extraneous offenses, it is not surprising that nearly half of appellant's ninety-six pages of testimony relates to previously committed offenses. The remaining pages focus on the offense at hand.[2] Third, in the State's closing argument, the prosecutor did not emphasize the impact the indecency with a child had on the family. The State did mention appellant was responsible for molesting a six-year-old-girl, but the State did not revisit the impact this had on the family or the victim.[3]

Fourth, from a juror's perspective, the primary offense was egregious. The evidence shows appellant admitted he held an innocent girl at gun point as his accomplice searched the house for cash and narcotics that the appellant and the accomplice took cocaine before committing this crime, and that appellant knew his accomplice could commit murder.

**2.** The border patrol officer and appellant's juvenile probation officer also testified for the State to the prior crimes appellant committed. The testimony of these two witnesses comprised about twenty-two pages out of the two hundred seventy-four pages of witness testimony presented by the State.

**3.** Throughout sixteen pages of closing argument, the State only mentioned the indecency with the child or the parents' testimony in the following way:
> His own mother sat up there and said that he has told his share of lies and that he could be manipulative, and that she got so fed up with him and at wits end that she finally gave up on him and kicked him out

With the overwhelming evidence in the case, and the other extraneous offenses, we do not find that the erroneous admission of the victim-impact testimony affected the jury's assessment of punishment. *See Boston v. State,* 965 S.W.2d 546, 550 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (holding although the admission of victim-impact testimony was error, it was harmless in light of the strength of evidence against the defendant). In short, even if the trial judge erred in allowing the victim-impact testimony of the parents, the error does not call for reversal, and we overrule appellant's fifth and sixth issues.

### 5. Hearsay Statement of Girlfriend

Next, appellant argues that hearsay by a defense witness should have been admitted in evidence. Elaina Tumlinson, the mother of appellant's child, was home the evening of the offense. She testified that appellant and the accomplice returned to her house after the crime. Appellant was upset, and when she asked him whether someone had been shot that night, she testified, "Justin told me that Roger said that he didn't shoot anybody. He just shot in the air or at the floor."[4] For two reasons, we disagree that this statement should have come in.

> on a number of occasions. His biological father said the same thing-this is this person's parents telling you that he is a liar and a manipulator.... What you know about him is that he is a sex offender. He was convicted for the molestation of a six-year-old little girl, his sister. He's a sex offender at the age of 16.... He's doing drugs, he's defiant, his probation officer testified that he minimized his involvement. He blamed the little girl and his stepmother for that, if you think back to her testimony.

**4.** This piece of the testimony was developed by an offer of proof by the defense.

■ First, appellant acknowledges that this statement is hearsay, yet he fails to show us why it is admissible. He cites us to no exceptions that apply to the statement.

■ Second, even if appellant could overcome the hearsay obstacle, this testimony was cumulative as to appellant's state of mind. *See Willover v. State,* 38 S.W.3d 672, 684 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Appellant himself testified he was not certain his accomplice shot a man. He heard gun shots upstairs but did not see what happened. However, appellant was "pretty sure" that his accomplice shot someone. When a trial judge excludes cumulative evidence, it is harmless error. *See Blalock v. State,* 728 S.W.2d 135 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd). We overrule appellant's seventh issue.

## 6. Jury Charge

Finally, appellant argues the trial judge erred by not including a definition of "criminal responsibility" in the jury charge. A statutory definition exists for criminal responsibility and appellant timely objected. For the reasons explained below, we agree the case must be reversed on this issue.

■ "A trial court's charge should include a definition of any legal phrase that the jury must necessarily use in properly resolving that issue." *Nguyen v.*

*State,* 811 S.W.2d 165, 167 (Tex.App.-Houston [1st Dist.] 1991, writ ref'd). "If a phrase, term, or word is statutorily defined, the trial court must submit the statutory definition to the jury." *Moore v. State,* 82 S.W.3d 399, 408 (Tex.App.-Austin 2002, pet. ref'd); *see also Alexander v. State,* 906 S.W.2d 107, 111 (Tex.App.-Dallas 1995, no pet.). Here, appellant properly objected and informed the trial court that the jury charge did not include a definition of "criminal responsibility." A definition for "criminal responsibility" exists.[5] *See* TEX. PEN.CODE ANN. § 7.02(a). Therefore, the trial judge erred in not including the definition in the charge.

■ Because appellant properly objected, we must determine whether harm resulted from the error. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984); *see also Arline v. State,* 721 S.W.2d 348, 351–53 (holding "any harm" not "some harm" will mandate a reversal if the appellant preserved error). If the appellant properly objected and if the error harmed the appellant, we must reverse. *See id.* We are to look to the entire record—not just the jury charge—for evidence of harm. *See Arline,* 721 S.W.2d at 351.

■ When a definition is not included in the jury charge, it is assumed that "the jury would consider the commonly understood meaning in its deliberations." *Olveda v. State,* 650 S.W.2d 408, 409 (Tex.Crim. App.1983) (holding the common definition

---

**5.** The penal code states the following definition for "criminal responsibility for conduct of another:"

(a) A person is criminally responsible for an offense committed by the conduct of another if:

(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

TEX. PEN.CODE ANN. § 7.02(a).

of "in the course of committing theft" is more restrictive than the statutory definition, and the lack of a definition favored appellant); *see also Nejnaoui v. State*, 44 S.W.3d 111, 120 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (holding the definition of "conduct" is neither complex nor unusual and the absence of a definition could not have confused the jury). Here, "criminally responsible" does not have a common definition every jury member could easily agree upon. One juror may define it as "arrested and convicted," while another could define it as "participating in any way" with the crime.

The ambiguous term "criminally responsible" is mentioned twice in the jury charge. The jury charge included in part the following:

> Therefore, if you find and believe beyond a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may consider such evidence in assessing the defendant's punishment. However, if you have a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may not consider such evidence in assessing punishment.

Here, the jurors needed the statutory definition to accurately assess appellant's possible involvement in narcotics smuggling. Appellant testified he did not know his companion had a pound of marijuana in his bag. However, the border patrol officer testified that both men acted suspiciously, and that appellant presented a false identity to him. Because we cannot say what impact a definition might have had on the jury, we find harm existed. The jury could have found appellant criminally responsible for the narcotics smuggling and given appellant a seventy-five-year incarceration sentence, or the jury could have found appellant not criminally responsible and possibly given him less than seventy-five years. We find the trial court erred by not including the definition, and appellant was harmed when the jury did not receive a definition of "criminally responsible." This error requires that we reverse appellant's punishment and remand for a new punishment hearing.

## CONCLUSION

In conclusion, we overrule appellant's first seven issues related to his trial below. However, we sustain his eighth issue because the trial judge did not include a definition for "criminal responsibility" in the jury charge. Therefore, we affirm the part of the trial court's judgment reflecting appellant's conviction, but reverse and remand for a new punishment hearing.