**Affirmed and Memorandum Opinion filed April 23, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00988-CR

**DARIAN BLOUNT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1517279**

## M E M O R A N D U M   O P I N I O N

Appellant Darian Blount appeals his conviction for aggravated robbery, raising six issues. First, appellant argues the evidence is legally insufficient to support his conviction. We overrule this issue because the record contains sufficient evidence for a reasonable jury to have found beyond a reasonable doubt that appellant was criminally responsible as a party to the charged offense. Second, appellant contends that the trial court erred in failing to submit three lesser included offenses in the jury charge. Because appellant failed to present any

affirmative evidence directly germane to any of the lesser included offenses appellant contends were wrongly excluded, we hold that no charge error exists on this record. Finally, appellant challenges two evidentiary rulings, but we determine upon review of the record that appellant has not established an abuse of discretion as to either ruling.

We affirm the trial court's judgment.

## Background

A Harris County grand jury indicted appellant for the felony offense of aggravated robbery. The State alleged that appellant, while in the course of committing theft of property owned by the complainant, Moses Malone, Jr., and with the intent to obtain and maintain control of the property, intentionally and knowingly threatened and placed Malone in fear of imminent bodily injury and death. The State further alleged that appellant used and exhibited a deadly weapon, specifically a firearm, in the commission of the offense. Appellant pleaded not guilty, and the case proceeded to a jury trial.

The alleged offense occurred shortly after 2:00 a.m. in the parking lot of an after-hours strip club known as V Live.[1] The State's version of events begins the day before, so we start there. Malone posted on his Facebook account a picture of NBA basketball player James Harden promoting Harden's youth basketball camp. The promotional picture indicated a cost of $249 per child for the two-day camp. Malone's caption stated: "Don't he [Harden] make WAY more $ than Donald Driver??? But he charging 249$ & The inner city kids have NO CHANCE to go to his camp. Hollywood Harden [emoji emoji emoji emoji] #Fact".

---

[1] Witnesses explained that "after-hours" means that the club opens at 2 o'clock in the morning and closes at 6 o'clock in the morning.

Shortly thereafter, Malone's security guard, John Thomas, called Malone to tell him that Harden was upset about the Facebook post. Malone deleted the post that same morning. Later that day, according to Malone, he received a text message allegedly from Harden, sent on a mutual friend's phone. The text message read, "Aye listen my [expletive]. If you got something to say. We not doing no social media. I will pull up wherever you at and see what's going on. You a [expletive] [expletive] Fa real for even goin on Facebook talking shit. [Expletive] boy."

The next night, Malone and Thomas drove to V Live. Malone was a regular patron at the club, and he was familiar with appellant, who worked as the club's head of security.

After leaving his car, Malone saw appellant walking toward him and leading a group of ten to fifteen men. The group approached and circled Malone and Thomas. Appellant "got in [Malone's] face" and told Malone not to talk about Harden on Facebook. Appellant warned Malone that Malone was "going to end up dead out here." Malone then saw three men pull out guns, and a fourth person had a gun out as well.

Malone testified that he "smirk[ed]" or "smiled on them," and "that's when [appellant] did it, he said get him." One of the men—later identified as Oscar Wattell—punched Malone, ripped his earrings out, went through his pockets, and took a chain from around Malone's neck. Another man—later identified as Kavon Boutte—also punched Malone and took a chain. Malone fell to the ground, where he was kicked. As he was being kicked in the face, Malone heard appellant say "punch that [expletive], kick that [expletive]. He got to learn. He got to learn. Punch that [expletive]. Kick that [expletive]." Malone also heard appellant tell someone to get his phone.

3

According to Malone, both Wattell and Boutte exhibited guns during the robbery, but appellant did not. Although appellant did not have a weapon, Malone testified that appellant was in charge of the group that robbed Malone, saying "he brought those guys to me."

Afterward, the group dispersed and appellant entered the club. Thomas followed a couple of the men to the back of the parking lot and was able to recover Malone's car keys, ID, and credit card, which he returned to Malone. Using Thomas's cell phone, Malone called 911. Houston Police Department Officer Eric Bettinger was the first officer to arrive. Officer Bettinger testified that Malone had redness and scratches on his jaw, and one of his earlobes was bleeding. Malone told Officer Bettinger that the following property had been taken from him: a David Yurman rope chain and diamond pendant, worth $20,000; a gold Versace rope chain, worth $2,000; a David Yurman rope chain, green diamond pendant, worth $20,000; David Yurman gold and diamond earrings, worth $4,000; an Apple iPhone 6, worth $700; Louis Vuitton sunglasses, worth $1,000.

Given the reported value of the stolen items, Officer Bettinger contacted the department's Robbery Division and was told "to basically shut the club down. Don't let anybody in. Don't let anybody out." Officer Bettinger estimated that there were approximately 200 to 400 people inside the club that night. Harden, who was inside the club during the events, attempted to leave through the back door, but Officer Bettinger told him to stay in the club.

Detective Sergeant Tony Mora was the robbery detective on call that night, and he took command of the scene as the lead investigator. The police allowed women to leave unimpeded, but required male patrons to leave one-by-one so Malone could identify anyone as a possible suspect. Malone identified Wattell and Boutte as two of the men involved in the robbery. In total, the police documented

227 men leaving the club, but appellant was not one of them. Malone also identified someone he believed was appellant's brother, who Malone said was not involved in the robbery but might have information of appellant's whereabouts.

Sergeant Mora decided to not search patrons as they exited the club, preferring instead to clear the premises as quickly as possible. Sergeant Mora did not believe he had grounds to search any vehicles in the parking lot, either. The police officers searched the club for any weapons "in obvious plain view," but ultimately did not recover any guns. The police also were unable to obtain any video surveillance recordings.

Although appellant was not at the scene when police arrived, Malone gave Sergeant Mora appellant's name; also, Malone and Thomas identified appellant from a photo array administered by Sergeant Mora. A few weeks later, Sergeant Mora called appellant to hear his side of the story. Sergeant Mora recorded the phone call, which was introduced into evidence and played for the jury. Appellant said that he encountered Malone in the parking lot, approached him "in a professional manner" to tell appellant not to talk about Harden, and then appellant went inside the club. Once inside, some members of the club's security team alerted appellant to a fight outside. According to appellant, he returned to the parking lot to break up the fight. Sergeant Mora said that he did not believe appellant's version of events after speaking with him on the phone.

However, appellant said several things that to Sergeant Mora supported Malone's stated motive—i.e., that appellant participated in the robbery in retaliation for Malone's Facebook post about Harden. For instance, appellant said that Harden spent more money than Malone at the club, which indicated to Sergeant Mora that appellant considered Harden a more significant customer than appellant. Further, appellant admitted that he confronted Malone about discussing

5

appellant's customers on social media, which Sergeant Mora thought "lend[ed] credibility to the motivation that was expressed by [Malone]."

Other witnesses testified about their knowledge of events. Thomas corroborated Malone's testimony regarding the armed robbery, including appellant's role. According to Thomas, appellant led toward Malone a group of ten to twelve men, five of whom were armed with guns. Appellant told Malone not to talk about Harden, and then appellant said "get 'em." The men punched and kicked Malone. Thomas confirmed that Malone wore jewelry that night but, after the incident, Malone was no longer wearing jewelry and his ears were bleeding. Thomas also testified that he entered the club after the robbery and saw appellant "and the same dudes that did the situation . . . went to a section that James Harden was on . . . [a]nd they all over there high-fiving each other."

Imaine Molo, the club's floor manager, corroborated Malone's testimony that Harden used her phone to send Malone a text message about the Facebook post. Molo, who was at the club the night of the robbery, said that she did not witness the robbery, did not have any information about the robbery, and did not see either appellant or Malone that night.

Eric Dillard, the club's DJ, testified that when he arrived at the club, he saw appellant, Malone, and Thomas "talking loud." Dillard said he thought the men were talking about money that Malone owed the club, but Dillard did not actually hear the substance of the conversation before going inside.[2] Dillard did not see appellant or anyone else touch or punch Malone. Dillard denied that appellant had

---

[2] Malone told Sergeant Mora that Dillard recorded the robbery on his phone. At Sergeant Mora's request, Dillard voluntarily relinquished his phone. Upon review of the phone's contents, Sergeant Mora did not find any pertinent recordings. Dillard made a phone call to Molo around the time of the robbery, but both Molo and Dillard denied knowledge of any fight or robbery.

anything to do with Malone being robbed outside the club. Both Molo and Dillard testified that Malone never wore jewelry to the club.

Chris Chizer, the club manager, testified that he and Malone had a physical alteration once regarding money Malone owed the club. Chizer did not see Malone or appellant the night in question. Chizer did not know what occurred outside, who was involved, how many people were involved, or if anyone had weapons.

Marvin Ferguson, a club employee, testified that he saw Malone try to enter the club, but appellant told Malone that he could not enter. At that point, Ferguson went inside. Ferguson denied seeing appellant or anyone else confront or rob Malone.

Finally, Gary Womack testified. He contradicted Malone's prior testimony that Malone had not been drinking the night of the robbery. According to Womack, Malone had been drinking while attending Womack's wife's birthday party earlier in the night. Womack went to V Live after his wife's party, but he did not see any altercation between Malone and appellant.

The trial court submitted the charge to the jury, asking whether appellant was guilty of aggravated robbery or the lesser included offense of aggravated assault. The charge allowed the jurors to find appellant guilty as a principal actor, as a participant under the law of parties, or as a participant in a conspiracy. The jury found appellant guilty of aggravated robbery. After a punishment hearing, the trial court sentenced appellant to thirty-five years in prison.

Appellant timely appeals.

## Analysis

Appellant presents six issues for our review. First, he challenges the sufficiency of the evidence. In his second, third, and fourth issues, appellant contends that the trial court reversibly erred in refusing to instruct the jury in the charge on three lesser included offenses. And in his last two issues, appellant argues that the trial court abused its discretion in two evidentiary rulings.

### A.     Sufficiency of the Evidence

In his first issue, appellant argues that the evidence is legally insufficient to sustain his conviction for aggravated robbery. We address this issue first because success would afford him the greatest relief. *See Finley v. State*, 529 S.W.3d 198, 202 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

### 1.  *Standard of review and applicable law*

Reviewing courts apply a legal-sufficiency standard in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *Pena v. State*, 522 S.W.3d 617, 620 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Under this standard, we consider the combined and cumulative force of all admitted evidence and any reasonable inferences therefrom in the light most favorable to the verdict to determine whether a jury was rationally justified in its verdict. *Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015).

The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Temple*, 390 S.W.3d at 360. We defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Kolb v. State*, 523 S.W.3d 211, 214 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd); *see also Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Kolb*, 523 S.W.3d at 214. We will uphold the jury's verdict unless a rational factfinder must have had a reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

The jury found appellant guilty of aggravated robbery. A person commits the offense of robbery if, in the course of committing theft[3] and with intent to obtain or maintain control of the property, the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code § 29.02(a). A person commits the offense of aggravated robbery if he commits robbery and, *inter alia*, uses or exhibits a deadly weapon. *Id.* § 29.03(a)(2).

Texas recognizes that any party to an offense may be charged with commission of the offense. *See id.* § 7.01(a), (b); *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016). A person is criminally responsible as a party to the offense "if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code § 7.01(a). A

---

[3] Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. Tex. Penal Code § 31.03(a).

person is criminally responsible for an offense committed by the conduct of another person if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2); *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012).

2. *Application*

The jury returned a general verdict, and we will uphold the jury's verdict if the evidence is sufficient to prove appellant committed the offense either as a primary actor or as a party criminally responsible for the conduct of another person who committed the offense. *See Humaran v. State*, 478 S.W.3d 887, 896 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Head v. State*, 299 S.W.3d 414, 426 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). There is no evidence that appellant used or exhibited a firearm during the course of the robbery. Accordingly, we agree with appellant that no evidence supports appellant's conviction for aggravated robbery as a principal actor.

However, the jury may have found appellant guilty because he was criminally responsible for the offense of aggravated robbery committed by others, so we examine the evidence to determine whether the verdict is sustainable under party liability. To establish that appellant committed the offense of aggravated robbery under the law of parties, the State had to prove that another person committed the offense of aggravated robbery, and that appellant, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid others to commit the offense, including the aggravating element of using or exhibiting a deadly weapon. *See Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986); *see also Sears v. State*, No. PD-0264-17, 2018 WL 4347878, at *4 (Tex. Crim. App. Sept. 12, 2018) (not designated for

publication) (to secure conviction under law of parties, the State "must demonstrate that the defendant intended to promote the full offense, including the aggravating element, before or during the commission of the offense")[4]; *Sarmiento v. State*, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("[W]here the use of a deadly weapon is an element of the offense, [to convict a defendant for aggravated robbery as a party,] the State automatically carries the burden of proving the defendant knew a weapon would be used or exhibited in the commission of the offense.").

Appellant argues that the jury's verdict cannot stand on a theory of party liability because the State failed to prove that appellant was criminally responsible for the aggravating element—i.e., that appellant knew that the other assailants would use or exhibit firearms during the robbery. Contrary to appellant's contention, however, the jury reasonably could have concluded based on the evidence presented that appellant intended to promote the full offense, including the aggravating element, before or during the commission of the offense.

Malone testified that appellant led a group of males, several of whom had firearms, toward Malone when Malone arrived at the club. Malone said that appellant confronted Malone about Malone's Facebook post. When Malone smirked at appellant, appellant said, "get him." Malone heard appellant tell the other assailants to punch and kick Malone because Malone needed "to learn." At appellant's direction, several of the men punched Malone, ripped his earrings out and his chains off, and kicked Malone when Malone fell to the ground. Malone also heard appellant instruct one of the men to take Malone's phone. Malone said that he was "scared[,] . . . upset[,] . . . really petrified" because he had never had a weapon aimed at him before.

---

[4] We do not cite *Sears* for precedential value. *See* Tex. R. App. P. 77.3.

11

Malone's testimony established all the elements of the charged offense under a theory of party liability, specifically that appellant encouraged or directed Wattell, Boutte, or other unknown assailants to commit theft while intentionally or knowingly placing Malone in fear of imminent bodily injury or death. *See* Tex. Penal Code §§ 7.02, 29.02, 29.03. Further, as some men displayed guns, appellant told Malone: "You're going to end up dead out here." Appellant's threat to Malone constitutes additional evidence of the aggravating element. A rational jury could have found that appellant's comment that Malone could "end up dead" indicated knowledge of the presence of deadly weapons to back up the threat. Viewed collectively, this evidence supports the jury's finding that appellant intended to promote or assist the commission of an aggravated robbery, and that appellant solicited, encouraged, directed, aided, or attempted to aid others to commit aggravated robbery. It is well-settled that the testimony of a sole witness to an offense may constitute sufficient evidence to support a conviction. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (upholding conviction for assault with intent to murder where only one witness saw defendant with gun); *see also Johnson v. State*, 176 S.W.3d 74, 77 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding evidence legally sufficient to sustain aggravated robbery conviction where complainant testified appellant robbed her at knife-point, complainant identified appellant in photographic lineup, and complainant identified appellant in court).

The jury heard more than just Malone's testimony. Thomas corroborated much of Malone's account, including that appellant instructed the other assailants to "get [Malone]" and that several men had guns visibly displayed. Thomas said the guns were "apparent to everybody." The jury could infer from this testimony that the firearms were visible to the entire group, including appellant, and that

12

appellant knew the other assailants would display, or were displaying, the guns to place Malone in fear of imminent injury or death. *See, e.g.*, *Sears*, 2018 WL 4347878, at \*6 (based on appellant's "integral part of the scheme to commit the robbery," jury could infer that appellant would have been aware of the manner in which the intruders planned to commit the offense, including the use of guns); *Kirvin v. State*, No. 05-09-00382-CR, 2010 WL 3259798, at \*5 (Tex. App.—Dallas Aug. 16, 2010, pet. ref'd) (not designated for publication) (based on testimony that appellant was "inside contact" and participated in planning and carrying out the offense, jury could infer that appellant knew each person's role in the offense, including use of firearm).

One additional piece of circumstantial evidence supports a finding of guilt. Although police responded to Malone's 911 call within minutes, appellant was no longer at the scene. Chizer, the club's manager, attempted to explain that appellant left the scene because he accompanied a high-profile customer who wanted to leave the club, but Sergeant Mora disproved this defense witness's explanation—the high-profile customer was documented as one of the 227 men "that were stuck inside once the officers locked down the location." Flight is a circumstance indicating guilt. *See, e.g.*, *Hardesty v. State*, 656 S.W.2d 73, 77-78 (Tex. Crim. App. 1983).

Viewing the cumulative force of the evidence in the entire record in the light most favorable to the verdict, we conclude that a jury rationally could have found beyond a reasonable doubt that appellant was aware that guns would be used or were being used in the commission of the robbery, and that appellant was guilty under the law of parties of committing the offense of aggravated robbery.

Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction, and we overrule his first issue.[5]

## B. Lesser Included Offenses

In his next three issues, appellant argues that the trial court erred in denying requests for inclusion in the jury charge of three lesser included offenses: (1) robbery; (2) assault by threat; and (3) deadly conduct.

### 1. *Standard of review and applicable law*

In a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense. Tex. Code Crim. Proc. art. 37.08. We analyze whether a defendant is entitled to a lesser included offense instruction under a two-step analysis. *See Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011). First, we decide whether the purported lesser included offense falls within the proof necessary to establish the offense charged. *Id.* at 68. To make this determination, we compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser offense. *Id.* This first step involves a question of law and does not depend on any evidence produced at trial. *See Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011).

In the second step of the analysis, we evaluate whether some evidence exists from which a rational jury could acquit the defendant of the greater offense while convicting the defendant of the lesser included offense. *Sweed*, 351 S.W.3d at 68.

---

[5] The charge also included an instruction that allowed the jury to find appellant guilty if, in the attempt to carry out a conspiracy to commit one felony, another felony was committed by one of the conspirators. *See* Tex. Penal Code § 7.02(b). Appellant argues that there was no evidence of a prior or contemporaneous plan to commit aggravated robbery, such that the jury's verdict cannot stand on a theory of conspiracy liability. Due to our disposition, we need not address appellant's contention regarding conspiracy liability.

The evidence must establish the lesser included offense as a "valid rational alternative to the charged offense." *Id.* We review all of the evidence presented at trial. *Id.* Anything more than a scintilla of evidence entitles a defendant to a lesser included offense charge. *Id.* Although a scintilla of evidence is a low threshold, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Id.* If some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations, then the standard is met and the instruction is warranted. *Id.*

We review the trial court's decision on the submission of a lesser included offense for an abuse of discretion. *See Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005); *Davison v. State*, 495 S.W.3d 309, 311 (Tex. App.— Houston [14th Dist.] 2016, no pet.). We turn to each of the lesser included offenses raised in appellant's brief.

2. *Application*

The trial court instructed the jury on the lesser included offense of aggravated assault. Appellant argues that he was also entitled to instructions on the lesser included offenses of robbery, simple assault by threat, and deadly conduct. For purposes of our analysis today, we assume that appellant properly requested these additional instructions in the trial court, and that robbery, simple assault, and deadly conduct are, as a matter of law, lesser included offenses of the charged offense.

Therefore, the only question is whether any affirmative evidence exists from which a rational jury could have found that, if guilty, appellant was only guilty of a

15

lesser included offense and not guilty of aggravated robbery. Before addressing each of the lesser included offenses discussed in appellant's brief, we summarize the pertinent evidence.

The jury was presented with two competing theories. The State argued that appellant participated in an aggravated robbery. The defense argued that appellant confronted Malone only about his Harden Facebook post or about paying back a debt, but that appellant was not involved in a robbery.

The State's main witnesses, Malone and Thomas, testified that appellant led a group of men, some armed, and instructed them to punch and kick Malone and go through Malone's pockets. Malone testified that the assailants stole thousands of dollars' worth of jewelry and personal belongings. Thus, these two witnesses testified to the essential elements of the charged offense, aggravated robbery. Molo and three of the four defense witnesses (Chizer, Ferguson, and Womack) all testified that they did not see any fight or confrontation involving Malone. Dillard testified that he saw a "commotion" between appellant and Malone, but he denied that it was a fight and he did not hear any words exchanged.

a. Robbery

A person commits the offense of robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he causes bodily injury to another or threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code § 29.02. Appellant argues that the jury "rationally could have concluded that appellant confronted Malone about an unpaid debt owed to the club and encouraged the other men to take Malone's property to recover the debt, but that he did not know that the men were armed."

16

There is no evidence that a robbery occurred, but that guns were not involved. Appellant's argument, essentially, is that the jury could have believed Malone's and Thomas's account of the events except for their assertion that guns were involved. But "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense." *Sweed*, 351 S.W.3d at 68. There must be evidence directly germane to the lesser included offense. Because there is no affirmative evidence directly germane to robbery, but not aggravated robbery, we hold that appellant was not entitled to an instruction on robbery. *See, e.g.*, *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (where defendant was charged with aggravated sexual assault based on his use of a knife, the fact that the knife was never found was not "affirmative evidence" that no knife was used during the assault, and therefore the trial court erred in granting the State's request for instruction on the lesser included offense of sexual assault), *abrogated on other grounds by Grey v. State*, 298 S.W.3d 644 (Tex. Crim. App. 2011).

We overrule appellant's second issue.

b. Simple assault by threat

A person commits the offense of assault if he intentionally, knowingly, or recklessly threatens another with imminent bodily injury. Tex. Penal Code § 22.01(a)(1), (a)(2). Appellant argues that the jury "rationally could have concluded that appellant confronted Malone about the Harden Facebook post and verbally threatened him with imminent bodily injury" but that Malone was not robbed or was robbed by someone other than appellant. Appellant does not direct us to any evidence that he verbally threatened Malone with imminent bodily injury

17

but that Malone was not robbed, nor does our review of the record reveal any such evidence.[6]

Because there is no evidence that would permit the jury to find that appellant was guilty only of assault, but not aggravated robbery, appellant has not established that he was entitled to an instruction on simple assault by threat. *See Knott v. State*, 513 S.W.3d 779, 794-95 (Tex. App.—El Paso 2017, pet. ref'd) (witness's testimony that he observed "altercation" was not affirmative evidence that only an assault took place, not robbery).

We overrule appellant's third issue.

### c. Deadly conduct

A person commits the offense of deadly conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. Tex. Penal Code § 22.05(a). Appellant argues that the jury "rationally could have concluded that appellant confronted Malone and verbally threatened him with imminent bodily injury while the armed men threatened him with guns but that Malone was not robbed." We disagree.

To be entitled to the deadly conduct charge, there must be some evidence in the record that would permit a jury to rationally find that if appellant is guilty, he is guilty only of deadly conduct, not aggravated robbery. Appellant asserts, without citation, that the record contains some evidence that appellant was a party to Malone being threatened with imminent bodily injury with firearms. But the only evidence that Malone was threatened by one or more armed assailants was

---

[6] Appellant asserts, without citation, that evidence shows Malone did not wear jewelry, that appellant denied he was present during the incident, that appellant left after confronting Malone verbally, and that appellant returned to break up the fight. Even assuming that all of those assertions are supported by the record, none constitutes evidence of assault by threat.

Malone's and Thomas's testimony that Malone was robbed at gunpoint. There is no evidence that appellant placed Malone in imminent danger of serious bodily injury but that Malone was not robbed at gunpoint. Appellant therefore was not entitled to an instruction on deadly conduct, and we overrule his fourth issue. *See, e.g, Benefield v. State*, 389 S.W.3d 564, 576-77 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (when defendant denies commission of any offense and there is no evidence establishing commission of a lesser included offense, he is not entitled to a charge on the lesser offense).

## C. Evidentiary Rulings

### 1. *Standard of review*

We review a trial court's evidentiary rulings for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Neale v. State*, 525 S.W.3d 800, 809 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A trial court does not abuse its discretion when its ruling falls within the zone of reasonable disagreement. *Gonzalez*, 544 S.W.3d at 370. Under the abuse-of-discretion standard, we must uphold the trial court's ruling if the record reasonably supports it and it is correct under any legal theory applicable to the case. *Neale*, 525 S.W.3d at 809. We may not substitute our judgment for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Even if a trial court errs, however, we will not reverse the judgment unless the appellant demonstrates that the erroneous evidentiary ruling affected his substantial rights. *See* Tex. R. App. P. 44.2(b); *Rodriguez v. State*, 546 S.W.3d 843, 861 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

## 2. *Admission of evidence of Malone's good character*

In his fifth issue, appellant argues that the trial court reversibly erred by admitting a portion of Malone's testimony over appellant's objection.

Appellant's counsel asked Malone during cross-examination whether he had a relationship with appellant. Malone answered:

> No, I didn't. That's not a relationship. Being cordial is not a relationship. That's called being respectable. Like I told you yesterday, my dad tells me to treat the CEO just like you treat the janitor. If you know anything about Moses Malone or you know how the Malone family is, we're very giving people. My dad and I have done everything in this world for people that are underprivileged. My kids -- my family members grew up in the Fifth Ward. I used to give them all my clothes. I used to give them all my shirts, everything that they needed to make sure people had the same type of life that we had.

Appellant's counsel objected, "[N]onresponsive. That was a yes-or-no question." The trial court did not rule on appellant's objection but instead instructed counsel to "[a]sk your next question, please." Appellant did not move to strike the witness's answer. Appellant now argues that Malone's answer is inadmissible character evidence, citing Texas Rule of Evidence 404. *See* Tex. R. Evid. 404(a)(1) (generally, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait").

We hold that appellant failed to preserve his allegation of error. Appellant's objection at trial—that Malone's answer was non-responsive—does not comport with his complaint on appeal—that Malone's answer was inadmissible character evidence. *See Smith v. State*, 200 S.W.3d 644, 650 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (appellant's trial objection to non-responsiveness did not comport with his complaint on appeal that testimony impermissibly impeached

20

appellant's credibility).  For this reason, appellant has not preserved his complaint for our review.  *See Vasquez v. State*, 225 S.W.3d 541, 543 (Tex. Crim. App. 2007) (noting that a court of appeals may not overturn a trial court's decision on a legal theory not presented to the trial court); *McQueen v. State*, No. 14-17-00366-CR, 2018 WL 3977943, at *1 (Tex. App.—Houston [14th Dist.] Aug. 21, 2018, pet. ref'd) (mem. op., not designated for publication) ("A complaint is not preserved for appellate review if the legal basis for the complaint on appeal varies from the complaint made at trial.").

Without reaching the merits, we overrule appellant's fifth issue.

3. *Exclusion of evidence of Malone's reputation for dishonesty*

In his sixth issue, appellant complains that the trial court reversibly erred by excluding a portion of a defense witness's testimony on the State's objection.

During direct examination, appellant's counsel asked Dillard, the club DJ, whether Dillard was "familiar with [Malone's] reputation in V Live."  The State objected to relevance, the trial court sustained the objection, and appellant's counsel put on an offer of proof outside the presence of the jury.

As relevant here, Dillard testified during the offer of proof that Malone would borrow money from the club and had a reputation with the staff at V Live of not paying his debts.[7]  Appellant argues on appeal that the evidence that Malone "had a bad reputation with management because he borrowed money and did not pay his debts was admissible to show his reputation for untruthfulness."  Further, according to appellant, the trial court's erroneous exclusion of this evidence of

---

[7] Dillard also testified that the staff at V Live "like[d] [Malone] till he get drunk" and that Malone could be "[a]ggressive on the girls," but appellant does not explain how the exclusion of this evidence affected his substantial rights, and so we do not include it in our analysis.

21

Malone's dishonesty affected appellant's substantial rights because it could have convinced the jury that Malone's version of events was not true.

Assuming for the sake of argument that the trial court abused its discretion in excluding Dillard's testimony, we conclude that appellant has not shown the requisite harm that would entitle him to relief.

The erroneous admission or exclusion of evidence does not affect a defendant's substantial rights and is harmless if the evidence is cumulative of other evidence admitted to prove the same fact. *See Lindsay v. State*, 102 S.W.3d 223, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *see also Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (holding that to show harm excluded evidence must be controlling on material issue and not cumulative of other evidence); *Rangel v. State*, 179 S.W.3d 64, 70 (Tex. App.—San Antonio 2005, pet. ref'd) (holding no harm existed when complained-of excluded evidence was admitted through other testimony).

Here, Dillard's testimony was cumulative of other testimony regarding Malone's alleged nonpayment of debts owed to V Live. Chizer, the club manager, testified that Malone "always borrowed money from [Chizer]," that "every time [Malone] come to the club, like three or four times a week, he'd probably borrow like three or $4,000 every time he come," that Malone owed Chizer money, that Malone had an outstanding debt with V Live the week of the incident at issue, and that Chizer previously had at least one physical confrontation with Malone regarding Malone's unpaid debt. Dillard also testified without objection that Malone "borrowed money all the time" and that Malone owed at least $1,000 to the club the night of the alleged robbery. Therefore, even if the trial court erred in excluding the portion of Dillard's testimony included in the offer of proof, the

exclusion was harmless.  *See Anderson*, 717 S.W.2d at 628; *Lindsay*, 102 S.W.3d at 230; *Rangel*, 179 S.W.3d at 70.

We overrule appellant's sixth and final issue.

## Conclusion

We affirm the trial court's judgment.


/s/    Kevin Jewell
        Justice


Panel consists of Justices Jewell and Hassan and Retired Justice Marc W. Brown, sitting by assignment.

Do Not Publish — Tex. R. App. P. 47.2(b).